UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT TIMMEL,

                                Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    09-CV-5S

WEST VALLEY NUCLEAR SERVICES
COMPANY, LLC and WEST VALLEY
ENVIRONMENTAL SERVICES, LLC,

                                Defendants.

## I.  INTRODUCTION

Plaintiff Robert Timmel  commenced this employment discrimination action by filing

a Complaint in the District Court for the Western District of New York.  Therein, he alleges

that Defendants West Valley Nuclear Services Company, LLC and West Valley

Environmental Services, LLC (collectively "West Valley") discriminated against him on the

basis of his disability.  Plaintiff brings this action pursuant to the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the New York State Human Rights Law

("NYHRL"), N.Y. Exec. L. § 290 *et seq.*  Presently before this Court is Defendants' Motion

for Summary Judgment seeking dismissal of Plaintiff's complaint in its entirety.[1]  Plaintiff

opposes the motion.[2]  For the reasons stated below, Defendants' motion is granted.

---

[1]In support of its Motion for Summary Judgment, Defendant filed the Affidavit of Toni M. Sawyer, with Exhibits; a Memorandum of Law; a Local Rule 56.1 Statement of Undisputed Material Facts; an Appendix to Local Rule 56.1(a) Consolidated Statement of Undisputed Material Facts; the Reply Affidavit of Toni M. Sawyer, with Exhibits; and Reply Memorandum of Law.  (Docket Nos. 27, 32.)

[2]In opposition to Defendant's motion, Plaintiff filed a Memorandum of Law, with Exhibits.  (Docket No. 31.)

1

## II.  BACKGROUND

**A.     Facts**

Plaintiff, Robert Timmel, is a resident of the Town of Collins, Erie County, New York. (Complaint ("Comp."), Docket No. 1, ¶ 4.)   At all times prior to September 1, 2007, Defendant West Valley Nuclear Services was a contractor to the United States Department of Energy, carrying out remediation efforts at the West Valley Nuclear Demonstration Site ("Demonstration Site").   (Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("Defs.' Statement"), Docket No. 27, ¶ 1.)   From September 1, 2007 and on, Defendant West Valley Environmental Services, also as contractor to the United States Department of Energy, assumed those responsibilities.  (Id. ¶ 2.)  Defendants were responsible, as part of their contracted duties, for disposing of solidified high-level radioactive and chemical waste, as well as disposing of decommissioned facilities used in the solidification process at the Demonstration Site. (Id. ¶ 3.)

Timmel began his employment with West Valley in March 1989 as a D&D Operator. (Id. ¶ 7; Comp. ¶ 10.)   In that position, Timmel's duties included performing asbestos removal, handling, sorting, and shipping chemical, radioactive, and industrial waste, handling chemical spills, fork truck operations, snow removal, and computer entry.  (Defs.' Statement ¶ 10.)

On November 10, 2003, Timmel was diagnosed with malignant lymphoma.  (Comp. ¶ 11.)   Timmel submitted a physician's statement to his supervisor and West Valley's medical department.  (Comp. ¶ 12.)  This letter stated that Timmel was to be excused from

working, permanently, in radiological areas.   (Defs.' Statement ¶ 15.)   West Valley complied with this instruction.   (Id.)

Timmel alleges that thereafter the conditions of his employment worsened. Specifically, in 2005 West Valley's Operations Manager, Joe Ebert, told Timmel he should "get a different job" and "should just quit" because of Timmel's inability to "suit up and do all the work."  (Comp. ¶ 13.)  On February 1, 2007, West Valley's Site Project manager, J.P. Curcio issued a memorandum that all personnel should be fully utilized to their medically assessed capabilities, and that those employees who were believed "not medically fit" should be assessed immediately.  (Id. ¶ 15.)  On February 21, 2007, Timmel was involved in an incident during which he and two co-workers were moving a container which fell and spilled non-hazardous equipment.  (Id. ¶ 18.)  Timmel and his co-workers determined that there was no risk of danger and positioned the box back on the fork truck and moved it to its designated staging area.  (Id.)  As a result of this incident, West Valley discharged Plaintiff and one of his co-workers, Harold Wonderly, for violation of West Valley's "Stop Work" policy, charging that Timmel took a deliberate action that had a detrimental effect on the safety of employees or the general public.  (Id. ¶ 17.)

Pursuant to a collective bargaining agreement, Timmel's union, the International Association of Machinists and Aerospace Workers, District 65, Lodge No. 2401 ("Union") filed a grievance on behalf of Timmel and Wonderly.  (Id. ¶ 21; Defs.' Statement ¶¶ 4, 19.) The Union and West Valley selected Dennis J. Campagna to arbitrate the dispute.  (Defs.' Statement ¶ 20.)  Arbitration took place on July 11 and October 2, 2007.  (Id.)  Both parties presented documentary evidence, offered testimony and cross-examined witnesses.  (Id. ¶ 21.)  On December 21, 2007, Arbitrator Campagna issued a Decision and Award finding

3

that, although Timmel and Wonderly had violated West Valley's Stop Work Policy, their termination was "unwarranted and unnecessary" and instead imposed a sentence of one-month, unpaid suspension. (Id. ¶¶ 24, 25.) Timmel was compensated for all pay, benefits, and seniority due to him from April 2, 2007, marking the end of his suspension period, to January 2, 2008, the date on which he returned to work. (Id. ¶ 29.) On the same day as Arbitrator Campagna issued his decision, Timmel filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Comp. ¶ 23.) In that charge, Timmel alleged that West Valley had discriminated against him on the basis of an actual or perceived disability. (Id.)

Either before returning to work, on December 31, 2007, or in early February 2008, Timmel presented West Valley with one or more letters from his physician, stating he could continue working subject to certain restrictions. (Id. ¶ 25; Defs.' Statement ¶ 36.) These restrictions included no use of a negative pressure respirator, no bubble suit, no repetitive bending, lifting, twisting, no lifting over 40 pounds, and no work in excess of 40 hours per week. (Defs.' Statement ¶ 36.) These letters also stated that Timmel was prohibited from working in radiological areas of any kind. (Comp. ¶ 27; Defs.' Statement ¶¶ 33, 34, 35, 36.)

West Valley alleges that from January 2008 onwards, it had completed all demolition work on non-radiological areas of the Demonstration Site. (Defs.' Statement ¶ 39.) Consequently, the work of every D&D Operator included entering and working in radiological areas. (Id.) West Valley met with Timmel and the Union on March 18, 2008 to discuss whether there were any essential duties at the Demonstration Site that would permit Timmel to work within his medical restrictions. (Id. ¶ 42.) Timmel confirmed that any amount of radiation would prevent him from working in an area, regardless of any

4

additional protective equipment.  (Id. ¶ 44.)  Timmel proposed that West Valley assign him to non-radiological duties.  (Id. ¶ 45.)  According to Timmel, such duties could include inspecting respirators, racking and sorting tools and equipment, laundering non-radiological clothing, and data entry.  (Id. ¶¶ 47, 48, 49, 50.)

West Valley concluded that no vacant position encompassed a combination of these duties and no other position existed which could accommodate Timmel.  Consequently, West Valley assigned him to a janitorial position at the wage rate of a janitor.  (Id. ¶ 55.) Timmel filed a grievance and West Valley referred the matter to Arbitrator Campagna on April 8, 2008, to resolve whether West Valley's assignment conformed with his prior ruling. (Id. ¶ 57.)  Timmel filed a complaint with OSHA on April 17, 2008, and an Amended Charge Affidavit with the EEOC on July 2, 2008.  (Id. ¶¶ 64, 70.)  The EEOC issued a Dismissal and Notice of Rights on October 6, 2008, finding that it was unable to conclude that the information Timmel provided established a statutory violation.  (Id. ¶ 73.)  The arbitrator issued a supplemental decision on November 22, 2008 in which he found that Timmel could no longer perform the duties of a D&D operator and that the janitorial position was the only position that fit his medical restrictions.  (Id. ¶¶ 60, 61.)  The following year, on November 2, 2009, Timmel's OSHA complaint was dismissed in its entirety.  (Id. ¶ 66.)

Timmel resigned his position in October 2009.  (Plaintiff's Memorandum of Law in Support of his Response to Defendants' Motion for Summary Judgment ("Pl's. Resp."), Docket No. 31, 1.)

**B.      Procedural History**

Plaintiff filed his Complaint with the Clerk of this Court on January 5, 2009.  West Valley filed an Answer thereto on March 3, 2009.  West Valley filed the instant Motion for Summary Judgment on September 30, 2010.

## III.  DISCUSSION AND ANALYSIS

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

6

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication."  Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation."  Id.

**B.    Plaintiff's Discrimination and Retaliation Claims**

The complaint's six causes of action allege that West Valley failed to provide Timmel with a reasonable accommodation for his disability, discriminated against him on the basis of that disability, and retaliated against him because of his EEOC activities all in violation of the ADA and NYHRL.   This Court will consider the ADA and NYHRL discrimination claims together, as they are analyzed under the same standard.  Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2nd Cir. 2006) ("The standard for liability under [state human rights laws] are the same as those standards under the equivalent federal anti-discrimination laws.").

ADA and NYHRL claims are analyzed under the McDonnell Douglas burden-shifting analysis.  Regional Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35,

49 (2d Cir. 2002); see also Arena v. Agip USA Inc., No. 95 CIV. 1529(WHP), 2000 WL 264312, at *7 (S.D.N.Y. Mar. 8, 2000).  Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination or retaliation.  Sista v. CDC IXIS No. Am., Inc., No. 02 Civ. 3470(GBD), 2005 WL 356973, at *5 (S.D.N.Y. Feb. 15, 2005); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  After a plaintiff presents his *prima facie* case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Treglia, 313 F.3d at 721.  If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture."  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)); see also Treglia, 313 F.3d at 721.  A plaintiff must then, in the third stage, produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  Id. at 42.  "[T]he question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  Id. at 42.  However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."  Id. (quoting St. Mary's, 509 U.S. at 519); see also Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

West Valley argues that Timmel cannot make out a *prima facie* case of discrimination or retaliation, because Plaintiff cannot proffer admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive.

Specifically, West Valley alleges that Arbitrator Campagna's December 21, 2007 and November 22, 2008 decisions prevent a finding of discriminatory motive as to either Timmel's one-month, unpaid suspension, or his assignment to janitorial duties.   West Valley further alleges that Timmel's reassignment was to the only position that could accommodate his medical condition.   Timmel responds that there are disputes concerning issues of material fact that preclude summary judgment.   As to Arbitrator Campagna's decisions, Timmel argues that the December 21 decision specifically characterized Plaintiff's initial termination as "discriminatory," and the November 22 decision was outside the Arbitrator's jurisdiction.

     1.    ***Prima facie* Case**

A plaintiff alleging discrimination on the basis of a disability must demonstrate that "(1) his employer is subject to the ADA [or NYHRL]; (2) he was disabled within the meaning of the ADA [or NYHRL]; (3) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (4) he suffered adverse employment action because of his disability." Sista, 2005 WL 356973, at *5 (quoting Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2000)).   Similarly, a plaintiff alleging retaliation on the basis of a disability must show that "(1) he engaged in an activity protected by the ADA [or NYHRL]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity.  Treglia, 313 F.3d at 719.

The evidence necessary for a plaintiff to satisfy the initial burden of demonstrating a *prima facie* case is "minimal" or "de minimis." Woodman v/ WWOR-TV, Inc., 411 F.3d

69, 76 (2d Cir. 2005) (quoting Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)).  Here, Plaintiff's allegations are sufficient to make out a *prima facie* case.  As to Plaintiff's discrimination claim, West Valley does not dispute that Plaintiff's malignant lymphoma constituted a disability, or that West Valley was subject to the ADA and NYHRL.  West Valley also does not dispute that it was aware of Plaintiff's complaint to the EEOC or that such a complaint is protected by the ADA.  See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (filing complaint with EEOC is protected activity under ADA).  Likewise, West Valley does not argue that Plaintiff's requests for a reasonable accommodation are not a "protected activity" for purposes of an ADA retaliation claim.  Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) (citing Muller v. Costello, 187 F.3d 298, 311 (2d Cir. 1999)).  Nor is there any dispute that Plaintiff's initial termination and his later assignment to a lower-paid janitorial position constitutes an adverse employment action.  See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand); Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996) (adverse employment actions affect terms, privileges, duration, or conditions of employment).

Therefore, the only issues that remain are whether Plaintiff has submitted sufficient evidence to show a causal connection between his protected activity and disability, and the adverse employment action.  Put another way, Plaintiff must show that West Valley acted against him because of his disability.

Plaintiff has alleged that whereas he and another co-worker, who also suffered from health problems, were to be terminated for the accident on February 21, 2007, a second

10

co-worker with no such disabling conditions, was not terminated.  Furthermore, Plaintiff has alleged that in February 2008 he submitted a physician's letter imposing various restrictions on Plaintiff's work, and that the following month West Valley assigned Timmel to janitorial duties.  See Cifra, 252 F.3d at 216 ("[C]ausal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").  In consideration of the exceedingly low bar a plaintiff must overcome to present a *prima facie* case, this Court finds that Timmel has done so in regards to his discrimination and retaliation claims under the ADA and NYHRL. See Weeks v. New York State Div. of Parole, No. 00 CV 5865 SJ, 2002 WL 32096593, at *5 (E.D.N.Y. Nov. 25, 2002) ("[T]he Court grants Plaintiff the benefit of the doubt, assumes that she has made out a sufficient *prima facie* case, and will now proceed to the next stage of the analysis under McDonnel Douglas.").

### 2.    Legitimate, Non-Discriminatory Reason and Pretext

Having overcome the initial challenge of presenting a *prima facie* case, Plaintiff shifts the burden to Defendants to show a legitimate, non-discriminatory reason for attempting to terminate Timmel and, later, demoting him to the position of janitor.  See Treglia, 313 F.3d at 721.  Assuming West Valley can do so, Timmel will need to present evidence that West Valley's reason is a pretext for intentional discrimination.  See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  It is here that West Valley's reliance on Arbitrator Campagna's two decisions becomes important.  See MacMaster v. City of Rochester, No. 05-CV-6509, 2007 WL 2892015, at *12, n.8 (W.D.N.Y. Sep. 28, 2007) (addressing weight of arbitral decision at second and third stages of burden-shifting

11

analysis).[3]

"[A] decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link." Collins v. New York City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002).  In the context of a Title VII claim, the Second Circuit has determined that a plaintiff "to survive a motion for summary judgment must present strong evidence that the decision was wrong as a matter of fact – e.g. new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised."  Id.  Although Plaintiff here brings his claims under the ADA and NYHRL, that distinction is not significant.  See Young v. Benjamin Dev. Co., No. 03 Civ. 10209(RJS), 2009 WL 498933, at *9 (S.D.N.Y. Feb. 17, 2009) (applying Collins to ADA claim).  Arbitrator Campagna issued two decisions.  This Court must consider whether either of these decisions warrants granting Defendants' Motion for Summary Judgment.

### (a)   Arbitrator Campagna's December 21 Decision

Arbitrator Campagna's decision on December 21, 2007 addressed Timmel's termination following the accident on February 21, 2007.  Plaintiff has argued that he was disciplined because West Valley wanted to get rid of him due to his disability.  Contrary to that view, the Arbitrator found that "[West Valley] based its decision to terminate the Grievants based on its conclusion that their failure to stop and analyze the risk before continuing to work show[ed] a deliberate action to place [themselves] and others at risk of injury and damage to additional equipment."  (Affidavit of Toni M. Sawyer ("Sawyer Aff."),

---

[3]As the court in Macmaster recognized, whether this Court considers the impact of an arbitral decision at the first, second, or third stage of the burden-shifting analysis does not change the analysis of whether Defendants are entitled to summary judgment.  2007 WL 2892015, at *12, n.8.  But see Young v. Benjamin Dev. Co., No. 03 Civ. 10209(RJS), 2009 WL 498933, at *9 (S.D.N.Y. Feb. 17, 2009) (applying Collins to first stage of burden-shifting analysis)

Docket No. 27, Ex. 7, p.15.)  Further, the Arbitrator agreed with West Valley that Timmel was in violation of company policy.  "[I]t was incumbent upon the Grievants to STOP WORK immediately, contact their supervisor, and not resume work until such time as the supervisor evaluated the situation and determined that it was okay to continue the operation."  (Id. at p.15.)  The Arbitrator's express finding that the cause of Timmel's punishment was violation of the Stop Work policy substantially weakens Timmel's assertion that West Valley was acting with a discriminatory intent.  See Collins, 305 F.3d at 119 (arbitrator's determination "highly probative of the absence of discriminatory intent").  This is reinforced by the fact that Arbitrator Campagna characterized Timmel's violation as so serious as to warrant a month-long, unpaid suspension.  Plaintiff avoided a harsher penalty only because of various mitigating circumstances.  These included Plaintiff's long period of employment, the comparably less severe penalties imposed for prior violations of the Stop Work policy, and the fact that it was "more likely than not that the situation giving rise to the Grievants termination [would] not be repeated."  (Sawyer Aff., Ex. 7, pp.17-19.)

Upon review of the Arbitrator's decision and reasoning, this Court concludes that the Arbitrator's opinion was "based on substantial evidence" and that Arbitrator Campagna was "an undisputedly independent, neutral, and unbiased adjudicator."  Collins, 305 F.3d at 119.  Accordingly, this Court is bound to give the Arbitrator's conclusions significant weight, such that summary judgment will be inappropriate only if Plaintiff can show circumstances comparable to the existence of new evidence that was not before the Arbitrator, or that the Arbitrator's judgment was somehow biased or prejudiced.  See id.

Instead of presenting such evidence, Plaintiff instead attempts to reinterpret the December 21 decision in his favor.  Specifically, Plaintiff views as significant that Arbitrator

13

Campagna characterized Timmel's termination as "discriminatory."  Plaintiff also points to the Arbitrator's recognition that previous violations of the Stop Work policy had been punished far less severely.  As the Arbitrator recognized, however, West Valley was acting from the belief that Timmel violated not only the Stop Work policy, but that his actions also constituted a "deliberate action which had a detrimental effects on the safety of employees or the general public."  (Sawyer Aff., Ex. 7, p.16.)  That the Arbitrator found Plaintiff had not acted grossly negligent does not imply that West Valley acted with a discriminatory motive. This is especially the case because of the Arbitrator's unambiguous determination that "it is clear that [West Valley] rested its decision to terminate the Grievants based on its conclusion that the Grievants, by their actions on February 21, 2007, failed to Stop Work, in violation of Company Policy."  (Id. at p.13.)  The use of the word "discriminatory" is simply a reference to the disparities that had accompanied prior violations of the Stop Work policy. (Id. at p.17.)  That Arbitrator Campagna failed to explicitly say that West Valley had not discriminated against Plaintiff on the basis of his disability is irrelevant.  See Robinson v. Getinge/Castle, Inc., No. 02-CV-6049, 2005 WL 272964, at *8 (W.D.N.Y. Feb. 2, 2005) ("Plaintiff's only contention is that the issues of discrimination and retaliation were not before the arbitrator . . . . [t]his same argument, however, has been rejected repeatedly by courts in this Circuit.").

**(b)   Arbitrator Campagna's November 22 Decision**

Arbitrator Campagna's second decision, on November 22, 2008, addressed the issue of Plaintiff's relegation to janitorial duties.  Plaintiff argues that West Valley's demotion constitutes disability-based discrimination and retaliation.  But, as before, the Arbitrator's conclusions contradict a finding of discriminatory intent.  (Sawyer Aff., Ex. 13,

14

p.5).   The Arbitrator did not find "that [West Valley] was arbitrary, capricious or discriminatory in its decision to assign Mr. Timmel to the janitorial position."  Id.  He did find that the janitorial position was the only one that suited Plaintiff's medical restrictions.  (Id. at p.6.)  He also found that West Valley had not acted in bad faith.  "[T]there is nothing in the record that demonstrates that [West Valley] closed the door on future opportunities should Mr. Timmel's medical condition improve, and should other positions that he might be capable of performing in the future [be] available at that time."  (Id.)  Had the Arbitrator credited Plaintiff's assertions that he was being discriminated against on the basis of his disability, the Arbitrator could not have concluded that West Valley was open to assigning Plaintiff to suitable positions as they became available.  As already discussed, "'a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link' between her protected activity and termination." Hand v. New York City Transit Auth., 149 Fed. Appx. 282, 283 (2d Cir. 2005) (quoting Collins, 305 F.3d at 119).  Accordingly, the Arbitrator's November 22 decision "is highly probative of the absence of discriminatory intent" and requires Timmel to show that the decision was wrong as a matter of fact by, for example, showing that there is new evidence that was not before the Arbitrator or that the Arbitrator's impartiality had been compromised by the time of his second decision.  Morel v. Am. Bldg. Maint. Co., 124 Fed. Appx. 671, 672 (2d Cir. 2005) (quoting Collins, 305 F.3d at 119).

Plaintiff argues that the Arbitrator's decision was outside his jurisdiction.  In lieu of citing any supporting case law, Plaintiff asserts that the arbitral decision is not binding because "Plaintiff never elected to have Arbitrator Campagna decide the issue as to discrimination."  (Pl.'s Resp. 14.)  The Court agrees that it is not bound by principle of res

judicata or collateral estoppel.   Nevertheless, as previously discussed, impartial arbitral tribunals' decisions are afforded great weight and can only be overcome by a narrow range of arguments.  The circumstances of this case mean that Plaintiff's arguments fall outside that range.

In his first decision, Arbitrator Campagna ordered West Valley to return Plaintiff to his former position as D&D Operator.   Also in that decision, the Arbitrator expressly retained jurisdiction "solely for the purpose of resolving any issues that might occur in the implementation of this Award." (Sawyer Aff., Ex. 7, p.22.)  West Valley had failed to do so, ostensibly because of Plaintiff's renewed medical restrictions.  Accordingly, the question of whether West Valley was in non-compliance with the Arbitrator's order, and whether Timmel's posting to janitorial duties brought it into compliance, were matters properly before the Arbitrator.  "Given [West Valley's] action relative to Mr. Timmel in placing him in a position other than the D&D Operator position, it must be determined if [West Valley's] action in this regard ran afoul of my decision and Award or was otherwise arbitrary or capricious." (Sawyer Aff., Ex. 13, p.5.)

This Court agrees that Arbitrator Campagna properly retained jurisdiction over this dispute.  Although Plaintiff did not bring the issue of disability-based discrimination before the Arbitrator, there is no dispute that the parties resorted to arbitration following Plaintiff's termination.  The Arbitrator was correct to find that the matter of Plaintiff's demotion fell within the parameters of his original decision, specifically, whether West Valley was in compliance. The Arbitrator was free to assess whether the demotion complied with his first decision after West Valley made a Motion for Review.  (Id. at p.3.)  The Court also notes that Plaintiff does not appear to have raised any objection to Arbitrator Campagna's

16

jurisdiction despite participating in a teleconference and submitting letter briefs immediately prior to the Arbitrator's second decision.  (Sawyer Aff. ¶ 59); see also Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1511 (3rd Cir. 1994) ("[W]here a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred."), *aff'd*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).  Accordingly, this Court finds that Arbitrator Campagna had jurisdiction to render his November 22 decision.  Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l Football Ltd. P'ship, No. 09 Civ. 7490(PKC), 2009 WL 4059174 , at *5 (S.D.N.Y. Nov. 17, 2009) (absent other agreement, general presumption in favor of courts determining whether issue arbitrable); see also Bevona v. 820 Ave. Assocs., 27 F.3d 37, 39 (2d Cir 1994) (citing AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)).

Plaintiff's contention that the pending EEOC charge removed jurisdiction is unavailing.  An argument similar to plaintiff's was made, and rejected, by the court in Stoker v. Norris Cylinder Co.. No. 2:10-CV-583-TJW-CE, 2011 WL 4369450, at *3 (E.D. Tex. Aug. 23, 2011), *report and recommendation adopted by* 2011 WL 4370544 (E.D. Tex. Sep. 19, 2011).  In that case,  plaintiff argued that an arbitrator lacked jurisdiction because plaintiff had an unresolved EEOC charge pending at the time the arbitrator rendered his decision.  Id.  The court rejected this argument because  "receipt of an EEOC right-to-sue letter is not a jurisdictional prerequisite, but rather is a condition precedent subject to various equitable modifications."  Id. (quoting Russell v. Good Shepherd Med. Ctr., No. 2-08-CV-206, 2009 WL 2487108, at *2 (E.D. Tex. Aug. 12, 2009) (alterations omitted)).  Although Plaintiff here appears to suggest West Valley engaged in foul play by referring

17

the matter to Arbitrator Campagna, this Court finds that the same conclusion as in <u>Stoker</u>

should apply.  Indeed, the facts of this case weigh even more in favor of this conclusion

because, as discussed above, this Court finds that it was the Arbitrator who had original

jurisdiction over the dispute by having retained jurisdiction over implementation of his

December 21 award.  West Valley was not precluded from resorting to, nor the Arbitrator

in exercising, the power conferred on the Arbitrator through the grievance procedures.

That Plaintiff had a discrimination charge pending before the EEOC does not block West

Valley from moving the Arbitrator to determine whether West Valley was in compliance with

his December 21 Decision and Award.  As already stated, the fact that Plaintiff's specific

disability-based discrimination claim was not before the Arbitrator does not negate the

weight an arbitrator's determination is given as to a defendant's intent.  As the court in

<u>Gallimore-Wright v. Long Island Railroad Co.</u>, addressing a similar argument, remarked:

> Plaintiff . . . argu[es] that <u>Collins</u> has no impact here because
> she did not present her discrimination and retaliation evidence
> in the disciplinary trial.  But that is entirely beside the point.
> There is no suggestion in <u>Collins</u> that the plaintiff had
> presented his evidence of discriminatory and retaliatory intent
> to the arbitrator. . . . [The Circuit's] point was that the
> arbitration decision finding that the plaintiff assaulted his
> supervisor and was properly terminated was strong evidence
> of a lack of retaliatory or discriminatory intent which, in the
> absence of any meaningful proof to the contrary, prevented the
> plaintiff from making out a *prima facie* case."

354 F. Supp. 2d 478, 491-92.

Moreover, Plaintiff, in conjunction with his Union, made the initial decision to resort

to the grievance process.  Having done so, Plaintiff cannot now remove himself from that

process, simply because he does not wish the Arbitrator to resolve an issue related to his

original opinion.  <u>C.f.</u>, <u>Santos-Reyes v. Gonzales</u>, No. C 05-4550 VRW, 2007 WL 988182,

18

at *4 (N.D. Cal. Apr. 2, 2007) (where "an employee elects the grievance process, and the process allows for allegations of discrimination, the employee 'may not thereafter file [an EEO] complaint on the *same matter* . . . irrespective of whether the grievance has raised an allegation of discrimination within the negotiated grievance procedure'" (quoting 29 C.F.R. § 1614.301(a)) (emphasis and alterations in original)).

Finally, this Court notes that even if there were any ambiguity in the Arbitrator's opinion, both Plaintiff's OSHA and EEOC discrimination claims were also dismissed.  The OSHA investigation concluded that the "evidence failed to support Complainant's assertion that he was demoted for raising health and safety issues to management, DOE and OSHA." (Sawyer Aff., Ex. 15, p.2.)  The investigation's findings mirrored those of Arbitrator Campagna.  "Complainant was only reassigned after he presented medical restrictions prohibiting him from performing the duties of a DDWO . . . . there is no evidence to support Complainant's assertion that either his reporting health and safety concerns or requesting dosemitry badge were a factor in his reassignment."  (Id.)  Plaintiff's EEOC charge was dismissed for similar reasons.  "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Sawyer Aff., Ex. 18.)

This Court agrees with the determinations of Arbitrator Campagna, OSHA, and the EEOC.  Plaintiff has provided this Court with no authority compelling a different result.  To be sure, Plaintiff argues that there remain genuine issues of material facts precluding summary judgment.  Yet, Plaintiff has provided this Court no Local Rules-compliant statement of facts.

Local Rule 56 states that "[t]he papers opposing a motion for summary judgment

19

shall include . . . if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." L.R. Civ. P. 56(a)(2). Local Rule 56 further states that "[e]ach statement by the movant or opponent pursuant to this Local Rule must be followed by citation to evidence that would be admissible." L.R. Civ. P. 56(a)(3). In the present case, Plaintiff has submitted a statement of facts as part of its memorandum of law. However, Instead of citing to the lengthy exhibits attached thereto, Plaintiff instead plagiarizes his complaint for support of his factual assertions. A complaint is not admissible to prove the truth of its contents. In re Blech Sec. Litig., No. 94 Civ. 7696(RWS), 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003) (citing Stevenson v. Hearst Consol. Publ'ns, Inc., 214 F.2d 902, 907 (2d Cir. 1954)). Not until the body of its memorandum, does Plaintiff refer this Court to specific citations in Timmel's unnumbered affidavit. Even then, Plaintiff continues citing to the complaint, only rarely citing to any exhibit included in his opposition other than Timmel's affidavit. The penalties for failing to follow this Court's Local Rules are clear. "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." L.R. Civ. P. 56(a)(2).

Even if this Court credits those parts of Plaintiff's memorandum that do have evidentiary support, Plaintiff fails to show that the disputes he identifies are material or disputed. For example, Plaintiff argues that even after he was demoted to janitor, he was re-trained on heavy equipment and asked to do various jobs that he had performed in his former position, including "general outdoor upkeep, painting, lawn care, and furniture moves." (Pl.'s Resp. 12.) But Plaintiff does not show how this was not considered by the

Arbitrator or how that fact would prove that West Valley was acting with a discriminatory motive.  Plaintiff also points to the fact that he was not provided with a radiation detection badge, but again, and as discussed further below, it is undisputed that Defendant did not provide Plaintiff with such a badge.  Accordingly, upon review of Plaintiff's assertions, and giving due consideration to Arbitrator Campagna's findings and decisions, this Court finds that Plaintiff's discriminatory and retaliatory claims are without merit.

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's discrimination and retaliation claims will be granted.

## C.     Plaintiff's Failure to Accommodate Claims

The complaint also raises a reasonable accommodation claim under both the ADA and NYHRL.  "Aside from the broader scope of covered disabilities under New York Executive Law § 296, [a plaintiff's] state law reasonable accommodation claim is 'governed by the same legal standards as federal ADA claims.'"  Cody v. County of Nassau, 345 Fed. Appx. 717, 719 (2d Cir. 2009).  To state a *prima facie* failure to accommodate claim, a plaintiff must establish that "(1) her employer was subject to the ADA; (2) she was disabled; (3) she was otherwise qualified to perform the essential functions of the job; and (4) defendant had notice of the disability and failed to provide such reasonable accommodations."   Johnson v. Maynard, No. 01-CV-7393, 2003 WL 548754, at *6 (S.D.N.Y. Feb. 25, 2003) (citing Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d Cir. 1995)).

Plaintiff specifically argues that West Valley knew of his disability but did not provide a reasonable accommodation.  "[T]he initial burden of requesting an accommodation is on

21

the employee and it is only after such a request has been made that the employer must engage in the interactive process of finding a suitable accommodation." Felix v. New York City Transit Auth., 154 F. Supp. 2d 640, 656-57 (S.D.N.Y. 2001).  As part of this informal interactive process, the employer and employee "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  Picinich v. United Parcel Serv., 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004) (quoting 29 C.F.R. § 1630.2(o)(3)).  Liability attaches to an employer for failing to provide a reasonable accommodation where "the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith."  Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005) (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 165 (3rd Cir. 1999)).

Plaintiff identifies two grounds on which West Valley failed to reasonably accommodate him.  First, West Valley refused to provide him with a radiation detection badge.  Second, West Valley demoted him to a janitorial position.

As to the radiation badge, Plaintiff argues that a radiation dosimetry badge, a device used to measure radiation levels, would have permitted him to continue his janitorial duties. Plaintiff argues such a badge would have been an easy and inexpensive accommodation of his condition.  West Valley responds that the badge was not necessary for him to perform his essential job functions as a janitor and that Plaintiff was actually seeking the badge for purposes of applying to a federal program.  (Sawyer Aff., Ex. 11.)

The Court agrees that Timmel has not shown that the radiation badge "would permit

22

h[im] to perform the essential job functions" of his janitorial position.  Thompson v. New York City Dep't. of Prob., 348 Fed. Appx. 643, 645 (2d Cir. 2009).  West Valley has submitted evidence that over 30 dosimeters, designed to detect unsafe radiation levels, were located around Plaintiff's work site.  (Reply Affidavit of Toni M. Sawyer, Docket No. 32, Ex. 21.)  West Valley has also shown that Plaintiff broke down the interactive process of seeking a reasonable accommodation by failing to provide clarifying medical instructions in response to West Valley's request.  (Id.)

As to the assignment to janitorial duties, Plaintiff argues that West Valley reasonably accommodated at least one other employee who was also unable to work in radiological areas because of exposure to toxic chemicals.  West Valley responds that the only alternative to janitorial duties was creating a new position for the sole purpose of accommodating Plaintiff, and that neither the ADA nor NYHRL imposes such a requirement.

"[T]o prevail on an ADA claim where the employer has offered reassignment as a reasonable accommodation, the employee must offer evidence showing both that the position offered was inferior to her former job and that a comparable position, for which the employee was qualified, was open."  Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999).  Timmel's medical restrictions prevented him from performing the duties associated with his former position.  (Sawyer Aff., Ex. 13, p.6.)  There is no dispute that the position of janitor was inferior to his former job, not least because of the accompanying pay cut.  In addition, Plaintiff suggested a number of duties he could perform, in an effort to establish a comparable position.  However, the record shows that no such position existed. (Defs.' Statement ¶¶ 51, 52.)  As already discussed, this Court gives great weight

to Arbitrator Campagna's determination that "[w]hile the janitorial position cannot be said to be a glamorous position, it is clear from this record that it was the only position that could accommodate Mr. Timmel's medical restrictions as well as one that would keep him employed." (Sawyer Aff., Ex. 13, p.6.)  Further, West Valley has shown that even the one employee Plaintiff claims West Valley accommodated, was still required to occasionally enter radiological areas.  (Sawyer Aff. ¶ 50.)  By contrast, Timmel could not enter any radiological area, for any amount of time.  (Comp. ¶ 27.)  As a result, this Court finds that the only way West Valley could have accommodated Plaintiff was to create a new position for him, composed of various duties, including respirator inspection, sorting tools, laundering non-radiological clothing, and limited data entry.  This Court finds that no such position existed and West Valley was not required to create such a position to accommodate Plaintiff.  See Norville, 196 F.3d at 99 ("[A]n employer need not reassign an employee if no position is vacant.  Nor is the employer obliged to create a new position to accommodate the employee." (citations omitted)).

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's failure to accommodate claims will be granted.


## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.


## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment

(Docket No. 27) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated: November 6, 2011
     Buffalo, New York


<u>/s/William M. Skretny</u>
William M. Skretny
Chief Judge
United States District Court